# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 9

### OCTOBER TERM, A.D. 2019

### January 22, 2020

AARON C. LINDEN,

Appellant
(Defendant),

v.                                                                                    S-19-0107

MARY C. LINDEN, n/k/a MARY C. ELIASON,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
>    Aaron C. Linden, pro se.

*Representing Appellee:*
>    Christopher M. Wages and Amanda K. Roberts, The Wages Group, LLC, Buffalo,
>    Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Aaron Linden (Father) and Mary Eliason (Mother), formerly Mary Linden, married in 1997 and had six children.  They divorced in January 2018.  The district court ordered Father to pay monthly child support and alimony.  Only a few months after the divorce was final, Father was terminated from his job.  He filed a petition to modify alimony payments, which the district court denied.  We affirm.

## ISSUE

[¶2]    We identify a single issue for review:[1]

> Did the district court abuse its discretion when it denied Father's petition to modify alimony payments?

## FACTS

[¶3]    Father and Mother married in 1997.  Mother remained at home to care for their six children, and Father, a distillery insurance salesman, was the breadwinner for the family.  The parties divorced in January 2018, when four of their six children were still minors.  The parties stipulated to a split custody arrangement, where one child would reside with Father and the other three with Mother.  Based on Father's net monthly income of $8500, the district court ordered Father to pay child support of $1740 per month.

[¶4]    In considering alimony, the district court first noted that "[i]n general, an award of property is . . . preferable to an award of alimony."  However, it concluded that "[i]n this case, the parties do not have sufficient property that an award of property can be made in lieu of alimony.  Father does have the ability to pay alimony, and Mother has also shown that some alimony is needed."  The court took note that the parties had "a lengthy marriage" and, that by agreement, Mother stayed home with the children while Father worked.  It observed that "Father's income is somewhat hard to calculate" due to the varying amounts of commission he earned from month to month, but nonetheless found

---

[1] On appeal, Father did not provide this Court a transcript for review or a statement of the evidence under W.R.A.P. 3.03.  Mother contends that we should summarily affirm the district court's ruling.  "We have long held that appellants must provide this Court with a record sufficient to allow adequate appellate review."  *Roberts v. Locke*, 2013 WY 73, ¶ 27, 304 P.3d 116, 122 (Wyo. 2013); *see also Knezovich v. Knezovich*, 2015 WY 6, ¶ 9, 340 P.3d 1034, 1036 (Wyo. 2015).  However, the lack of a transcript is not always fatal to an appeal.  *Matter of SAJ*, 942 P.2d 407, 409 (Wyo. 1997) (permitting review in the absence of a transcript where the objections filed by appellant were "sufficiently revealing of the facts which support our ultimate conclusions").  Here, the findings of fact and conclusions of law set forth in the district court's *Decree of Divorce* and *Order Denying Petition to Modify Alimony* provide sufficient context for this Court to consider Father's appeal.

that "Mother's earning capacity is significantly less than Father's."  It concluded alimony was appropriate to allow Mother "to either pursue an education or gain work experience."  The district court ordered Father to pay Mother monthly alimony of $1800 for five years.

[¶5]	In May 2018, Father was terminated from his job.  He accepted severance pay of $25,400 in exchange for a two-year non-compete agreement.  Father then struggled to find employment in his field of expertise, distillery insurance.  In November 2018, Father accepted a position as an independent insurance broker.  He anticipates he will earn very little until he builds a client base, which he testified will take several years.

[¶6]	The State of Wyoming filed a petition to modify child support on Father's behalf, and Father filed a pro se petition to modify alimony.  Mother then filed a petition to modify custody for the child in Father's keeping.[2]  Following a bench trial, the district court entered its order on April 10, 2019.

[¶7]	The district court granted Mother's petition to modify custody.  In considering child support, the district court noted each party's circumstances had changed since the entry of the divorce decree: Father had lost his job and had successfully applied for unemployment benefits; he was elected to the city council (a paid position); he had just started work with another insurance company on a commission basis; one of the children was about to graduate from high school; and Mother recently found employment as an administrative assistant.  The district court found that Father was voluntarily underemployed, stating:

> 35. Father testified that there were several jobs in the $30,000.00–40,000.00 range that he could have pursued. However, he chose not to accept one of these jobs because it would not have met all of his obligations.[5]
> [Footnote 5: Father did not explain why earning nothing and not paying any of his obligations is more reasonable than taking a job that would allow him to pay some of his obligations.]
> 36. Father chose to wait for another job in his preferred field of distillery insurance.  This is a highly specialized occupation, and there are not many jobs available in that field.  He has now accepted a position as an independent broker, but he is currently only going to receive $4,200.00 in commissions over the course of the next year.

---

[2] Mother alleged that while Father was granted physical custody of one of the children, that child resided with Mother.  Mother sought custody of this child.

37. While another job that would be equivalent to his previous position might not be currently available in the Sheridan area, there are plenty of other jobs for which he would qualify that pay much more than $4,200.00 a year. Father's skills as an insurance salesman would readily transfer to other occupations, and the Court finds that Father is realistically able to earn imputed income.

38. Further, Father chose to accept the severance package and sign the non-compete agreement. If Father had not done so, he might have been able to take several of his former clients to another insurance company. Therefore, he may have voluntarily limited his earning capacity.

39. Although the Court does not know the exact reason(s) that Father was terminated, given the evidence that was presented at the divorce trial regarding Father's behavior around the time the parties' [sic] separated and while the divorce was pending, it is likely that Father's behavior played a role in his termination.

40. Because Father has four (4) children to support and an alimony obligation, he does not have the privilege of waiting three-to-five (3-5) years to build a new client base. He will likely need to seek other employment at least until his non-compete agreement has expired.

41. For these reasons, the Court finds that Father is voluntarily underemployed.

42. Although Father is probably capable of finding better paying employment, he admitted that he declined positions that would have paid him $40,000.00. Therefore, the Court finds that his income should be imputed to $40,000.00 a year, which would give him a net monthly income of approximately $2,500.00 a month. When added to his wages from City Council, this would give him a net monthly income of $2,922.00.[3]

The district court granted the *Petition to Modify Child Support* and, using an imputed income of $40,000, ordered Father to pay the reduced amount of $957.04 per month in child support.

---

[3] The district court also noted that Father cashed out his 401(k) after he was terminated, took two vacations in the past year, and was planning a six-day trip to Thailand, which he claimed was a Christmas present.

[¶8]    Regarding the petition to modify alimony, the district court noted that the original award accounted for the reality that "[the] parties did not have sufficient property and assets" to divide, and Mother needed support during her transition into the workforce. The district court reiterated its findings that "Father was likely partially at fault for his termination, may have voluntarily limited his earning capacity by signing the non-compete agreement, and is now voluntarily underemployed." The district court denied Father's *Petition to Modify Alimony*. Father timely appeals.

## *STANDARD OF REVIEW*

[¶9]    Issues of child custody, visitation, child support, and alimony are reviewed for abuse of discretion. *Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 805–06 (Wyo. 2014).

> The basis of modification [of alimony], similar to changes in child support, is a change in circumstance. The decision rests in the sound discretion of the court provided that a change in circumstances does exist. The test for decision in alimony revision, W.S. 20-2-116, like child support, is exercised discretion of the district court and will not be disturbed on appeal absent clear abuse.

*Dorr v. Newman*, 785 P.2d 1172, 1178 (Wyo. 1990) (internal citations omitted).

[¶10]   We have said:

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present "'when a material factor deserving significant weight is ignored.'" *Triggs* [*v. Triggs*], 920 P.2d [653,] 657 [(Wyo. 1996)] (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993)).

*Stevens*, ¶ 8, 318 P.3d at 806 (quoting *Bingham v. Bingham*, 2007 WY 145, ¶ 10, 167 P.3d 14, 17–18 (Wyo. 2007)) (some citations omitted).

## DISCUSSION

### *Did the district court abuse its discretion when it denied Father's petition to modify alimony payments?*

[¶11] Father contends that the district court abused its discretion when it denied his petition to modify alimony. He submits that the district court erred when it found his presumptive income to be $40,000 for purposes of its child support calculation but then ignored this figure in refusing to modify alimony. The district court modified child support using the statutory guidelines and then, in a separate analysis, refused to modify alimony, recognizing that alimony and child support are governed by different statutes and here, the alimony was not based solely on Father's income.[4]

[¶12] Wyo. Stat. Ann. § 20-2-114(a) guides a court's division of marital property and provides:

> [t]he court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2019). "[A]n award of alimony requires evaluation of the financial needs of each party" and is impacted by the child custody determination. *Carlton v. Carlton*, 997 P.2d 1028, 1035 (Wyo. 2000) (internal citation omitted); *Ready v. Ready*, 2003 WY 121, ¶ 22, 76 P.3d 836, 842 (Wyo. 2003).

[¶13] Revision of alimony is permitted under Wyo. Stat. Ann. § 20-2-116:

> [T]he court may from time to time, on the petition of either of the parties, revise and alter the decree respecting the amount of the alimony or allowance or the payment thereof and respecting the appropriation and payment of the principal and income of the property so held in trust and may make any decree respecting any of the matters which the court might have made in the original action.

Wyo. Stat. Ann. § 20-2-116 (LexisNexis 2019). Modification, however, "can be made only on the showing of changed circumstances from those at the time of the former

---

[4] Wyoming's child support guidelines are set forth at Wyo. Stat. Ann. §§ 20-2-304, 307.

decree." *Dorr*, 785 P.2d at 1181 (Rooney, J., concurring); *see also Maher v. Maher*, 2004 WY 62, ¶ 9, 90 P.3d 739, 743 (Wyo. 2004). The changed circumstances must be substantial, and the appellant bears the burden of showing this change before modification will occur. *Heyl v. Heyl*, 518 P.2d 28, 31 (Wyo. 1974). The party seeking modification must also establish that the change in circumstances "outweighs the interest of society in applying the doctrine of *res judicata*." *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993). When one party seeks to modify alimony, "[t]here is a strong presumption that this original decree was reasonable, and it has been said that courts should proceed with caution in modifying any alimony decree." *Heyl*, 518 P.2d at 31 (internal citations omitted).

[¶14] A payor's diminished financial resources do not automatically result in modification, as Father seems to argue. In *Ready*, we denied the father's petition to modify alimony payments despite his contention that, as here, "his income has decreased and his ex-wife's increased between the date of the decree and the date of the modification petition." *Ready*, ¶ 23, 76 P.3d at 842. In *Heyl*, we found that although the husband presented some evidence that the wife's income had increased, he did not establish a substantial change in circumstances, and we declined to modify alimony payments. *Heyl*, 518 P.2d at 31. Similarly, in *Muller v. Muller*, we upheld the district court's original alimony award when the unemployed husband had no demonstrable capacity to pay, finding that even an obligor spouse's present unemployment "is not preclusive for alimony responsibility."[5] *Muller v. Muller*, 838 P.2d 198, 201 (Wyo. 1992). There, the parties had been married for sixteen years and the wife had developed "disabling health problems" costing her $1000 monthly. The husband challenged the "modest alimony contribution of $100 per month" to his ailing spouse. *Id.* at 199. We held that even when a payor suffers "severe financial difficulty," alimony may be awarded based on "the reasonable expectancy provided by a determinable earning capacity," or the "realistic business income expectancy test." *Id.* at 199, 201–02. Considering the entirety of the circumstances, a payor's financial difficulty does not prevent a trial court from awarding alimony when it is part of a just and equitable property settlement. *Id.* at 200–01. The Colorado Supreme Court held in *Beddoes v. Beddoes* that alimony should not be eliminated when the father had ample opportunity to improve his financial situation but did not apply himself in doing so, instead relying largely on royalties on a patent as his primary source of income. *Beddoes v. Beddoes*, 393 P.2d 1, 3–4 (Colo. 1964). Modification, however, should not always be denied when the payor demonstrates inability to pay.

> A quite frequently alleged change in circumstances to be met
> with in cases of this kind relates to the reduced financial

---

[5] While the appellant in *Muller* challenged the original alimony award, the principles are applicable to the petition to modify alimony here.

6

ability of the husband to pay . . . . Where the latter's financial condition has become impaired so that he is unable to meet the obligation imposed by the original decree, it is incumbent upon the court possessing jurisdiction under the statute quoted above to make a proper alteration thereof.

*Lonabaugh v. Lonabaugh*, 46 Wyo. 23, 34–35, 22 P.2d 199, 202 (1933).

[¶15] Father argued that his job loss constituted a substantial change in circumstances that required modification and that the district court erred when it found him voluntarily underemployed. To determine voluntary unemployment and underemployment, the court must consider:

> (A) Prior employment experience and history;
> (B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;
> (C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;
> (D) Availability of employment for which the parent is qualified;
> (E) Prevailing wage rates in the local area;
> (F) Special skills or training; and
> (G) Whether the parent is realistically able to earn imputed income.

Wyo. Stat. Ann. § 20-2-307(b)(xi) (LexisNexis 2019). The district court thoroughly considered these factors and then determined: "There is evidence in the record that if the husband . . . applied himself as diligently to useful labor or business as the former wife has done, his income would probably be enhanced in possibly greater proportion than hers has been increased." (quoting *Beddoes*, 393 P.2d at 3–4). The district court then concluded: "After considering the factors set out above, the Court finds that Father failed to prove . . . that the modification would be just and equitable and that the change in circumstances outweighs society's interest applying the doctrine of res judicata." We defer to the district court's assessment of credibility and our review does not include reweighing disputed evidence. *Meiners v. Meiners*, 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019).

[¶16] Father argues that the district court must base child support and alimony on the same imputed income. We conclude, however, that the district court was not bound to modify alimony because it modified the child support. The alimony served a different purpose and was not awarded solely on the basis of income but was, to a degree, in lieu of property available for division. The district court is entitled to look at the totality of

7

the circumstances in determining whether a modification is appropriate. *Ready*, ¶ 22, 76 P.3d at 842; *Muller*, 838 P.2d at 199, 201. Alimony is a separate inquiry from child support and may be based on a payor's expectation of future earnings:

> [T]he cases have frequently and uniformly held that the court may base its decision on the husband's ability to earn, rather than his current earnings. If the court were limited to the momentary current earnings of a husband, particularly one who was engaged in a seasonal industry or whose earnings had widely fluctuated, the court would get a distorted view of his financial potential.

*Muller*, 838 P.2d at 201 (quoting *Meagher v. Meagher*, 11 Cal. Rptr. 650, 651 (Ct. App. 1961)). The trial court "was justified in considering employment expectancy reasonably created by [Father's] experience, capability and physical ability" when it refused to modify the original award, notwithstanding the imputed income it used to modify child support. *Muller*, 838 P.2d at 199.

[¶17] "There are few rules more firmly established in our jurisprudence than the proposition that disposition of marital property, calculation of income for child support purposes, and the granting of alimony are committed to the sound discretion of the district court." *Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, 750–51 (Wyo. 2001). The district court did not abuse its discretion in finding Father was voluntarily underemployed and in refusing to modify alimony.

[¶18] Affirmed.

8